## Commonwealth v. Kockler

*Lawrence R. Wieder, assistant counsel,* for PennDOT.

*James G. Morgan Jr.,* for defendant.

DOWLING, *J.,* February 12, 1988—Donald Kockler, a former police officer, appeals the action of the Department of Transportation in suspending his operating privileges for failure to submit to a breathalyzer examination pursuant to section 1547

of the Vehicle Code. 75 Pa.C.S. §1547. We will sustain the appeal.

The dispute centers around whether Kockler was led to believe that he had an option with respect to the type of test that would be needed to satisfy section 1547(a)[1] of the code. There is no dispute that the personnel at the central booking station initiated processing for a breathalyzer test and that petitioner was informed of the implied consent law and refused. However, the crux of this case, and the point upon which this appeal stands or falls, is whether the processing personnel, specifically James Akers, essentially agreed to a blood test rather than a breath test for the purpose of satisfying section 1547(a). We find that Akers did agree and that consequently, petitioner was left with the impression that a blood test would suffice.

First, we must recognize the context in which the present dispute occurred. Petitioner refused to submit to field sobriety tests and did not respond to many of the questions which were asked during the videotape process. Faced with this lack of evidence, and unaware of any probable cause that may have been established in the field, Akers felt that the only alternative was a blood test. Without this information, a conviction for driving under the influence was obviously in jeopardy. Indeed, Akers testified that he does everything he can to collect as much evidence as possible. Defendant testified that he was then informed that a blood test would be used and that "that was okay with me." Petitioner also

_____

1. Section 1547 provides in pertinent part:

"Any person who drives . . . a motor vehicle in this commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcohol content of blood. . . ."

testified that the reason a blood test was "okay" was due to his experience with breathalyzer machines, which he felt did not give reliable results.[2] In essence, it was a quid pro quo proposition: evidence of guilt in exchange for compliance with section 1547(a).

In making this determination, we are aware of the following governing principles with respect to the implied consent law: Section 1547(a) has been construed to mean that a licensee has no right to choose which test he will perform, *Department of Transportation v. Bartle*, 93 Pa. Commw. 132, 500 A.2d 525 (1985); notwithstanding a motorist's fear of needles, there is no choice, *Smith v. Commonwealth*, 97 Pa. Commw. 74, 508 A.2d 1269, 1270 (1986); anything short of an unqualified, unequivocal assent to an officer's request constitutes a refusal, *Department of Transportation v. O'Rourke*, 25 Pa. Commw. 580, 361 A.2d 496 (1976); and an unconditional refusal followed by consent 30 to 45 minutes later still constitutes a refusal under section 1547(a). *Id.*

This case differs in that petitioner was led to believe that he had a choice, even though legally he had none. Moreover, a licensee is entitled to an accurate warning, *Binder v. Commonwealth*, 99 Pa. Commw. 548, 551, 513 A.2d 1105, 1107 (1986), which necessarily should include a statement to that effect. Here, there was no testimony that petitioner was so warned. Had petitioner been so informed, any uncertainty would have been eliminated. Additionally, the refusal to take the breathalyzer

2. In view of Auditor General Don Bailey's allegations, we note that petitioner is not the only person questioning their reliability.

test was not interposed for the purpose of delay because the blood test was agreed upon immediately after the refusal to submit to the breathalyzer. Kockler was promptly taken to the Harrisburg Hospital and blood was drawn, less than one hour after his arrest. The blood alcohol content was .22 percent, and as a result petitioner entered the ARD program in Cumberland County. Thus, the time lapse was insignificant and no prejudice resulted to the commonwealth.

> "Breath or blood, it matters not which you like;
> For if you refuse, you will have to hike.
> He said blood; they, the Breathalyzer 5000.
> He said I don't trust them;
> They said give blood then.
> He said all right,
> And off they went into the night.
> Some minutes later blood was withdrawn,
> And based upon this, charges were sworn.
> They say he refused.
> Not the least bit amused,
> He appealed to this Court,
> Claiming a loss of traction
> Due to the Department's reaction."[3]

Accordingly, we enter the following

## ORDER

And now this February 12, 1988, petitioner's appeal is sustained, and the order of the Secretary of Transportation cancelling the operating privileges of petitioner is reversed and his operator's license reinstated.

---

3. My otherwise competent law clerk penned this coda.